**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the Putative*
*FLSA Collective and Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERNDISTRICT OF NEW YORK**

| | |
|---|---|
| **MANUEL ANGEL CALDERON,** Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> **NETWORK INFRASTRUCTURE, INC.** and **PATRICK CLARKE, Jointly and Severally,** <br><br> Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Manuel Angel Calderon ("Calderon" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective and class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1.      Defendant Network Infrastructure, Inc. (hereinafter "Network Infrastructure" or the "Corporate Defendant") is a utility contracting company that specializes in utility asset management and contracting mainly in the gas, electrical, water, sewer, and telecommunication

1

industries. Network Infrastructure works regionally throughout the Northeast, including the five boroughs of New York City, as well as Westchester, Nassau and Suffolk counties.

2. In the New York City area, throughout the relevant time period, Network Infrastructure has contracted, either as a general contractor and/or as a subcontractor, with private companies and with multiple government agencies to provide construction, repair, replacement, relocation, and maintenance of gas lines, electric lines, telecommunication, water, and sewer lines, and other public utility systems.

3. Plaintiff is a former laborer-driver who worked for Defendants in the greater New York City area on numerous private and public projects.

4. Plaintiff and other members of the collective and putative class (collectively, the "Plaintiffs") are construction laborers, laborer-drivers, operators, mechanics, and all other workers who performed manual construction labor, with the exception of foreman, for Network Infrastructure throughout New York State.

5. Throughout the relevant time period, notwithstanding the fact that Plaintiffs were required to report to and perform work at the Network Infrastructure yards each morning prior to traveling to the job sites, and were required to return to the yard after leaving the job sites each afternoon, Plaintiffs were only paid for time spent working at the job sites and were not compensated at all for time spent working at the Network Infrastructure yards, participating in mandatory weekly safety meetings, or for time spent traveling to and from the yard to the different job sites. Thus, Plaintiffs were consistently paid for fewer hours than they actually worked, many of which were hours worked in excess of forty (40) in a week, for which they should have been paid overtime premiums.

6. Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. For weeks in which he worked a total of fewer than forty hours, Plaintiff also brings a claim for unpaid "gap-time" wages, pursuant to the NYLL.

7. Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all laborers, laborer-drivers, operators, mechanics, and all other workers performing manual construction labor, with the exception of foreman, for Network Infrastructure in New York during the six (6) year period preceding the filing of this complaint, plus 228-day COVID-19 tolling period instituted by the Governor of New York in several Executive Orders between March and October 2020.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls the thirty (30) days "any

y
z

specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continue until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issues Executive Order 202.48 tolling all statutes of limitations until August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a tolling of the statute of limitations of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiff:**

13. <u>Plaintiff Calderon</u> was, at all relevant times, an adult individual residing in Nassau County, New York.

14. Plaintiff worked for Defendants as a construction worker and laborer-driver from in or around April 2022 through in or around late October 2022 (the "Calderon Employment Period").

15. Throughout the Calderon Employment Period, Plaintiff primarily performed work for Defendants at and based out of Defendants' Bronx yard, located at 1095 Close Avenue, Bronx,

New York 10472 (the "Bronx Yard") and at job sites through New York City and Westchester County, particularly in and around New Rochelle. In addition, on a few occasions, Plaintiff Calderon worked at one of Defendants' yards located in Westchester County, in or around Pelham, New York (the "Pelham Yard").

16. Throughout the Calderon Employment Period, Plaintiff typically worked five (5) days per week, from between approximately 6:00 am and 6:30 am through between approximately 5:30 pm and 7:00 pm, for a total of approximately sixty (60) hours per week, and sometimes more. Approximately twice per month, he was also required to work another approximately eight (8) hours on Saturdays. On occasion, during instances when the construction sites were closed due to weather, Plaintiff worked fewer days per week.

17. Throughout Plaintiff Calderon Employment Period, Plaintiff was paid the construction laborer rate in the amount of approximately forty-three dollars and eighty-five cents ($43.85) per hour. Plaintiff received his supplemental benefits from the Local Union 731.

18. Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

19. <u>Defendant Network Infrastructure, Inc.</u> is an active New York corporation with its principal place of business located at 94 Taft Avenue, Hempstead, New York 11550.

20. Network Infrastructure, Inc. has been in operation for approximately twenty-five (25) years, having initially registered with the New York State Department of State on March 1, 1999.

21. At all relevant times, the Corporate Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the

meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

22. Upon information and belief, at all relevant times, the Corporate Defendant had gross revenues in excess of $500,000.00.

18. <u>Defendant Patrick Clarke</u> ("Clarke" or the "Individual Defendant" and collectively with the Corporate Defendant, the "Defendants") is a founder, owner, and operator of Network Infrastructure who sets the Corporate Defendant's payroll policies, including the unlawful practices complained of herein.

19. Throughout the relevant time period, upon information and belief, the Individual Defendant was in charge of determining the Corporate Defendant's policies with respect to payroll and otherwise running the business of Network Infrastructure.

23. In corporate filings with the New York State Department of State, Division of Corporations, Clarke is listed as the Chief Executive Officer of the Corporate Defendant.

24. The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in his direction and control of Plaintiff and the Corporate Defendant's other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

25. Upon information and belief, the Individual Defendant maintains offices as well as a yard at 94 Taft Avenue, Hempstead, New York 11550, from where he manages operations of the Corporate Defendant.

26. Plaintiff often observed Defendant Clarke, whom he knew as "Patrick," conducting the mandatory safety meetings for employees at the Bronx and Westchester yards and approximately once per week observed Defendant Clarke present at job sites, where he oversaw

the work being performed.

27. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

28. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

29. Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Network Infrastructure Inc. at any time since July 18, 2021 and through the entry of judgment in this case (the "Collective Action Period") who worked as construction laborers, laborer-drivers, operators, mechanics, and all other workers performing manual construction labor, with the exception of foremen, in New York State (the "Collective Action Members").

30. A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay for off-site work performed, including overtime premiums for all work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

31. Plaintiff and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## **FED. R. CIV. P 23 NEW YORK CLASS ALLEGATIONS**

32. Pursuant to the NYLL and the New York common law, Plaintiff brings his Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Network Infrastructure Inc. at any time since December 2, 2017 and through the entry of judgment in this case (the "Class Period") who worked as laborers, laborer-drivers, operators, mechanics, and all other workers who performed manual construction labor, with the exception of foremen, in New York State (the "Class Members").

33. <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

34. <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

35. Upon information and belief, there are well in excess of forty (40) Class Members.

36. <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

   a. whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

   b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

   c. whether Defendants failed and/or refused to pay Plaintiff and the Class Members regular wages for all hours worked each workweek;

    d. whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

    e. whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

    f. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

37. <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, was a construction employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid regular wages for all hours worked or overtime premium pay for all hours worked over forty (40) hours in a given workweek. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

38. <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

39. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

40. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

41. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the

corporate defendant.

42. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## ADDITIONAL FACTUAL ALLEGATIONS

**Plaintiff and the Collective and Class Members Were Not Paid Wages for All Hours Worked**

43. Throughout the relevant time period, Defendants failed to pay Plaintiff and the Collective and Class Members wages for all hours worked at their regular rate or overtime premiums of one and one-half (1.5) times their regular rate for all hours worked in excess of forty (40) in a week.

44. Throughout the relevant time period, Plaintiff and the Collective and Class Members performed construction labor duties, including but not limited to, cleaning and preparing construction sites by removing debris, garbage, and other possible hazards; loading and unloading materials, equipment, and tools at the Defendants' yards to be used at the construction site; building or taking apart bracing, barricades, scaffolding, and other temporary structures; and digging trenches, backfilling holes, and compacting earth to prepare areas at the construction site.

45. Pursuant to Defendants' policy, Plaintiff and the Collective and Class Members were required to arrive at one of Defendants' yards between approximately 6:00 am and 6:30 am, to perform their regular duties, beginning with receiving their job assignment and loading the Defendants' truck with necessary tools and equipment needed for the day. Depending on the location of a given day's work site, Plaintiff and the Collective and Class Members typically arrived at the work sites between approximately 7:30 am and 8:30 am. Plaintiff and the Collective

and Class Members then performed their regular manual construction duties at the work sites for approximately eight (8) hours. Subsequently, Plaintiff and the Collective and Class Members were required to drive the Defendants' truck back to the yard, unload equipment and materials, and dispose of debris and garbage from the workday. Plaintiff and the Collective and Class Members typically finished performing these duties between approximately 5:30 pm and 7:00 pm.

46. For those Collective and Class Members who were required to drive one of Defendants' trucks, as part of their driver duties, they were required each morning to check the operation of the truck, fill it with gas, load materials, equipment, and tools, and to unload these items at the end of the day. They were not compensated for these mandatory tasks.

47. In addition to the daily work required at the Defendants' yards, once per week, typically on Tuesdays or sometimes Wednesdays, Plaintiff and the Collective and Class Members were required to attend a mandatory safety meeting at the yard to which they were assigned. These safety meetings typically lasted between thirty (30) and forty-five (45) minutes and, upon information and belief, were required for all construction workers employed by Defendants. These safety meetings were uncompensated. Upon information and belief, if one of Defendants' construction workers failed to show up at the weekly safety meeting, they would not be permitted to work that day.

48. Throughout the relevant time period, Defendants kept track of the hours that Plaintiff and the Collective and Class Members worked at the job sites through handwritten timesheets and by electronic means. Once Plaintiff and the Collective and Class Members arrived at the work site, they were required to sign their names on a timesheet, which indicated their start time for work on the work site. Upon information and belief, all foremen and supervisors were also required to enter the same type of timekeeping information in a tablet.

49. Upon information and belief, foremen and supervisors typically recorded that the construction workers worked for eight (8) hours per day, even when they workers were required to work longer. At no time did foremen and supervisors track or record the hours worked by Plaintiff and the Collective and Class Members at Defendants' yard or traveling between the yard and work sites. As a result, Plaintiff and the Collective and Class Members were not compensated for a significant number of hours worked each week.

50. In addition to their hourly pay for work performed on the work sites, Plaintiff and certain of the Collective and Class Members were paid thirty (30) minutes per day for "travel time," which was often paid at one and one-half (1.5) times their regular hourly rates. However, Plaintiff and the Collective and Class Members were required to spend significantly more than thirty (30) minutes per day performing work at the yard and traveling between the yard and job sites, given that they were required to arrive early at the yard and return to the yard after each shift.

51. Defendants were well aware of their failure to compensate Plaintiff and the Collective and Class Members for all hours worked, as their company policy was to only record and pay for time spent working at the work sites. Plaintiff and certain of the Collective and Class Members complained to their direct supervisor regarding the lack of payment for the hours worked at Defendants' yards and the travel time, but never received a satisfactory explanation of why those hours were not compensated by Defendants.

52. Throughout the relevant time period, notwithstanding the fact that Plaintiff or the Collective and Class Members were required to report to and perform work at one of Defendants' yards at the start of their work day prior to traveling to the work sites and were required to return to the yard at the end of the day, at no point did Plaintiff or the Collective and Class Members receive compensation for these non work-site hours, aside from the thirty (30) minutes per day

Plaintiffs and certain of the Collective and Class Members were paid for travel time.

53. Defendants' failure to pay wages for all hours worked each week, including all work performed at Defendants' yard and traveling to and from the yard, was a corporate policy which applied to all laborers, laborers-drivers, operators, mechanics, and all other workers who performed manual construction labor, with the exception of foremen.

54. Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week was a corporate policy that applied to all laborers, laborers-drivers, operators, mechanics, and all other workers who performed manual construction labor, with the exception of foremen.

55. Plaintiff is aware that many other employees of Defendants left their employment due to the unlawful payment practice.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

56. Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

57. Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

58. By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

59. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

60. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID GAP-TIME WAGES
**(Brought on Behalf of Plaintiff and the Class Members)**

61. Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

62. Defendants violated the NYLL rights of the Plaintiff and the Class Members by failing to pay wages for all hours worked each week.

63. During weeks when Plaintiff and Class Members worked fewer than forty (40) hours, the hours that Defendants failed to pay should have been paid at Plaintiff's and Class Member's regular rates.

64. By failing to pay Plaintiff and Class Members at their regular rate for all non-overtime hours worked each week, Defendants have violated NYLL § 663(1).

65. Defendants' failure to pay wages for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid regular wages, damages for unreasonably delayed

14

payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff and the Class Members)**

66. Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

67. Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

68. Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

69. Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

{

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of compensatory damages as a result of Defendants' failure to pay regular wages, pursuant to the NYLL and supporting regulations;

g. An award of compensatory damages as a result of Defendants' failure to pay overtime premiums pursuant to the FLSA and the NYLL and supporting regulations;

    h.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

    i.    An award of prejudgment and post-judgment interest;

    j.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

    k.    Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        July 18, 2024

                            Respectfully submitted,

                            **PELTON GRAHAM LLC**

                            By: _____
                            Brent E. Pelton (BP 1055)
                            Taylor B. Graham (TG 9607)
                            111 Broadway, Suite 1503
                            New York, New York 10006
                            Telephone: (212) 385-9700
                            Facsimile: (212) 385-0800
                            Email: pelton@peltongraham.com
                                        graham@peltongraham.com

                            *Attorneys for Plaintiff and the Putative*
                            *FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered**
**Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of NETWORK INFRASTRUCTURE, INC., are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective and the class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of NETWORK INFRASTRUCTURE, INC., and charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6) year period preceding the filing of the complaint.

Dated: July 18, 2024

_____
Brent. E. Pelton

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Network Infrastructure Inc.** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____  
Signature

_Manuel A Calderon_  
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de **Network Infrastructure Inc.** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la forma en cómo debe llevarse a cabo este litigio, la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____  
Firma

_Manuel A Calderon_  
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

—« Advocates For Justice »—