**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MANUEL ANGEL CALDERON, Individually and On Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br> -against- <br><br> NETWORK INFRASTRUCTURE INC. and PATRICK CLARKE, Jointly and Severally, <br><br>            Defendants. | 1:24-cv-05442 (ALC)(BCM) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
Joanne M. Albertsen
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700

*Attorneys for Plaintiff, the FLSA Collective*
*and the putative Class*

**TABLE OF CONTENTS**

Page

Table of Authorities ........................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF THE FACTS. .......................................................................................2

I.     PLAINTIFFS' UNPAID WORK ALLEGATIONS ...................................................2

II.    DEFENDANTS' PROFERRED COLLECTIVE BARGAINING AGREEMENTS..............3

        A.     Local 731 ....................................................................................................4

        B.     Local 137 ....................................................................................................4

        C.     Local 60 ......................................................................................................4

        D.     Local 15 ......................................................................................................4

        E.     Local 1010 ..................................................................................................5

        F.     Local 1298 ..................................................................................................5

ARGUMENT ....................................................................................................................5

I.     LEGAL STANDARDS ............................................................................................5

        A.     LMRA PREEMPTION MUST BE NARROWLY CONSTRUED........................5

        B.     THE NLRA DOES NOT PREEMPT STATUTORY WAGE AND HOUR
             CLAIMS ....................................................................................................8

II.    PLAINTIFF'S WAGE AND HOUR CLAIMS CLAIMS ARE NOT PREEMPTED............5

        A.     WAGE AND HOUR CLAIMS RESTING ON AN INDEPENDENT
             STATUTORY RIGHT ARE NOT PREEMPTED ...............................................9

        B.     THE CBAs ARE ONLY TANGENTIALLY RELEVANT TO
             PLAINTIFF'S CLAIMS ...............................................................................14

        C.     *GARMON* PREEMPTION DOES NOT PREVENT THIS COURT FROM
             ADJUDICATING PLAINTIFFS' NYLL CLAIMS .............................................20

CONCLUSION.................................................................................................................22

CASES

*Allis-Chalmers Corp. v. Leuck,*
　471 U.S. 202 (1985)..................................................................................................6

*Arroyo v. NYU Langone Hosp.,*
　No. 19-cv-1624, 2019 WL 5682628, 2019 U.S. Dist. LEXIS 189531 (S.D.N.Y.
　Oct. 31, 2019) ...............................................................................................10, 11, 12

*Barrentine v. Arkansas-Best Freight System, Inc.*,
　450 U.S. 728, 101 S.Ct. 1437, 67 L. Ed. 2d 641 (1981)…………………………………6

*Berger v NY Univ.,*
　No. 19-cv-267, 2019 WL 3526533, 2019 U.S. Dist. LEXIS 129691 (S.D.N.Y.
　Aug. 2, 2019) ...................................................................................... 10, 12, 19-20

*Cheng Xia Wang v. Shun Lee Palace Rest., Inc.,*
　No. 17-cv-840, 2023 WL 4421699, 2023 U.S. Dist. LEXIS 117473 (S.D.N.Y. July 7,
　2023) ...................................................................................................................11-12

*Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.,*
　194 F. Supp. 3d 221 (S.D.N.Y. 2016) .................................................................. 6-7

*Concerned Home Care Providers, Inc. v. Cuomo,*
　783 F.3d 77 (2d Cir. 2015) ................................................................................... 8-9

*Cortese v. Skanska Koch, Inc.,*
　App. No. 21-473, 2023 WL 8368858, 2023 U.S. App. LEXIS 31876 (2d Cir.
　Dec. 4, 2023) .........................................................................................................20

*Cruz v. C.A.C. Industries, Inc.* (Cruz I)*,*
　Index. No. 805294/2024E, NYSCEF Doc. No. 25 (Bx. Cty. Sup. Ct. May 2, 2025)........14, 15

*Cruz v. C.A.C. Industries, Inc.* (Cruz II)*,*
　Index No. 805294/2024E, NYSCEF Doc. No. 38 (Bx. Cty. Sup. Ct. Oct. 21, 2025).......15, 16

*Derrico v. Sheehan,*
　844 F.2d 22 (2d Cir. 1988) ....................................................................................8

*Diaz v. New York Paving, Inc.*,
　No. 18-cv-4910, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325 (S.D.N.Y.
　Apr. 24, 2025) ..................................................................................................*passim*

*Domnister v. Exclusive Ambulette Inc.,*
　607 F.3d 84 (2d Cir. 2010) ................................................................................. 7-8

*Eldred v. Comforce Corp.,*
No. 3:08-cv-1171, 2010 WL 812698, 2010 U.S. Dist. LEXIS 18260 (N.D.N.Y. Mar. 2, 2010) ...................................................................................................................................20

*Figueroa-Torres v. Kleiner,*
No. 20-cv-4851, 2022 WL 768483, 2022 U.S. Dist. LEXIS 45018 (S.D.N.Y. Mar. 14, 2022) .......................................................................................................................................9

*Gyecsek v J.P. Hogan Coring & Sawing, Corp.,*
No. 18-cv-1023, 2019 WL 1059998, 2019 U.S. Dist. LEXIS 36074 (S.D.N.Y. Mar. 6, 2019)… ................................................................................................................................13-14

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki,*
471 F.3d 87, 96 (2d Cir. 2006).......................................................................................... 21

*Isaacs v. Cent. Parking Sys. of N.Y., Inc.,*
No. 10-cv-5636, 2012 WL 957494, 2012 U.S. Dist. LEXIS 38103 (E.D.N.Y. Feb. 27, 2012) ......................................................................................................................................11

*Kaye v. Orange Reg'l Med. Ctr.,*
975 F. Supp. 2d 412 (S.D.N.Y. 2013) ...................................................................................7, 11

*Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.,*
501 Misc.3d 201 (N.Y. Cty. Sup. Ct. Sept. 9, 2015) ............................................................11

*Lingle v. Norge Div. of Magic Chef,*
486 U.S. 399 (1988) ...................................................................................................6, 7

*Livadas v. Bradshaw,*
512 U.S. 107 (1994) .................................................................................................5, 6, 13

*Mack v. Metro-North Commuter R.R.,*
876 F. Supp. 490 (S.D.N.Y. 1994) .......................................................................................13

*Mazur v. UGS Herman, LLC,*
No. 23-cv-8839, 2024 WL 3952600, 2024 U.S. Dist. LEXIS 153813 (S.D.N.Y. Aug. 27, 2024) ....................................................................................................................................16

*McLean v. Garage Mgt. Corp.,*
No. 10-cv-3950, 2011 WL 1143003, 2011 LEXIS 32760 (S.D.N.Y. Mar. 29, 2011) .......7, 10

*Moran v. John J. Picone, Inc.,*
No. 24-cv-4095, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681 (E.D.N.Y. Sept. 30, 2025) ............................................................................................. *passim*

*Polanco v. Brookdale Hosp. Med. Ctr.,*
    819 F. Supp. 2d 129 (E.D.N.Y. 2011) ............................................................. 7, 9-10

*Ramirez v. RiverBay Corp.,*
    35 F. Supp. 3d 513 (S.D.N.Y. 2014) ......................................................................12

*Rest. Law Ctr. v. City of New York,*
    90 F.4th 101 (2d Cir. 2024) ...................................................................................21

*San Diego Bldg. Trades Council v. Garmon,*
    359 U.S. 236 (1959) ................................................................................... *passim*

*Sejdija v. First Quality Maintenance, L.P.,*
     No. 22-cv-4487, 2023 WL 2118029, 2023 U.S. Dist. LEXIS 27556 (S.D.N.Y. Feb.
    17, 2023) ........................................................................................................17, 18

*Severin v. Project OHR, Inc.,*
    No. 10-cv-9696, 2011 WL 3902994, 2011 U.S. Dist. LEXIS 99839  (S.D.N.Y.
    Sept. 1, 2011) ................................................................................................. 16-17

*Tamburino v. Madison Sq. Garden, LP,*
    115 A.D.3d 217 (1st Dept. 2014) .....................................................................12, 13

*Vera v. Saks & Co.,*
    335 F.3d 109 (2d Cir. 2003) ..................................................................................18


**Statutes, Rules, and Regulations**

Fair Labor Standards Act (FLSA)........................................................................ *passim*

Labor Management Relations Act (LMRA) ......................................................... *passim*
    § 301.................................................................................................5, 6, 8, 12

National Labor Relations Act (NLRA)................................................1, 2, 8, 19, 20
    § 7..................................................................................................................8, 9
    § 8..................................................................................................................8, 9

New York Lab. Law (NYLL) ............................................................................. *passim*
    Art. 19 .......................................................................................................................7
    § 196-d .....................................................................................................................13
    § 663..........................................................................................................................7

N.Y. Comp. Codes R. & Regs.
    § 142-2.2 ..................................................................................................................10

<u>**PRELIMINARY STATEMENT**</u>

Named Plaintiff Manuel Angel Calderon ("Calderon" or the "Named Plaintiff") and twenty-two opt-in plaintiffs (the "Opt-in Plaintiffs" and, collectively with the Named Plaintiff, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion filed by Network Infrastructure, Inc. ("Network Infrastructure) and Patrick Clarke (collectively, "Defendants") seeking to dismiss the Complaint on preemption grounds under the Labor Management Relations Act ("LMRA") and the National Labor Relations Act ("NLRA").

In search of a colorable argument for dismissing Plaintiffs' case based on preemption under Section 301 of the LMRA and the NLRA, Defendants misguidedly rely upon purportedly "ambiguous" language and "implied terms" in Network Infrastructure's collective bargaining agreements ("CBAs") entered into with a number of trade unions, which they are argue are inextricably intertwined with Plaintiffs' claims. (*See generally* Dkt. No. 99 [Defs.' MOL]). Their attempt to dismiss this case at this early stage must fail in light of binding caselaw of the Supreme Court and the Second Circuit that makes clear that straightforward wage and hour claims asserted by a member of a union are typically not preempted by the LMRA or NRLA or otherwise, where the Named Plaintiff makes no reference to a collective bargaining agreement ("CBA") in the complaint, does not argue that any portion of the CBA is unlawful, and does not assert that Defendants violated the CBA.

Simply put, there are no provisions in the CBAs attached to Defendants' Motion that are in any way called into question, contradicted, or otherwise invoked by Plaintiffs' claims for gap-time and overtime owed and calculated per the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL"). Defendants refer to numerous decisions that, as set forth in more detail below, in fact, make clear that where a party is not seeking specialized differentials under a CBA,

1

asserting claims directly contradicted or addressed by a CBA, or seeking to invalidate any portion of a CBA, there is no preemption.

In arguing that broad provisions pertaining to "hours of work," workdays, workweeks, and wage premiums effectively preempt all wage and hour claims, Defendants strongly imply that no union member could ever bring wage and hour claims in court. This is not the law. The simple fact that the FLSA and NYLL claims share certain factual considerations with portions of the CBAs is insufficient to justify preemption. Whether Defendants complied with their obligations under the CBA is simply irrelevant to the success of Plaintiffs' claims. The Court need not decide whether Plaintiffs worked outside the "hours of work," worked during specialized shifts, performed certain tasks of work, or utilized a free transportation service because Plaintiffs' claims do not depend upon any of these facts. Plaintiffs claim simply that they performed actual work that was not compensated, and Defendants have produced no CBA provisions that contradict this claim or otherwise require interpretation for this Court to evaluate these allegations.

Likewise, Plaintiffs have alleged no unfair labor practices and their claims in no way bear upon the right to organize. As such, Plaintiffs' claims are in no way preempted by the LMRA or NLRA, and this Action should proceed.

In all respects, and for the reasons set forth below, Plaintiffs' claims are not preempted, and Defendants' motion should be denied in its entirety.

**STATEMENT OF FACTS**

**I.        PLAINTIFFS' UNPAID WORK ALLEGATIONS**

As set forth in more detail in the Complaint (Dkt. No. 1 [Compl.]), Plaintiff Calderon worked as a construction worker and laborer-driver for Defendants, performing labor at one of Defendants' yards (the "Yards") before driving to the day's jobsite to perform construction work

and, at the end of the day, driving back to perform additional work. (Compl. ¶¶ 14-16, 43-47). Plaintiff is aware that a number of other workers employed by Network Infrastructure, including drivers and operators, were likewise required to perform work at the Yard on a daily basis before driving to jobsites and often performing work at the Yard after a shift as well. (*Id.* ¶¶ 43-46). In addition to this work, all construction workers employed by Defendants were required to attend weekly safety meetings, typically held at Defendants' Yards and were required to keep and maintain certifications—all without pay. (*Id.* ¶ 47; *see also* Pls.' Mem. of Law in Support of 216(b) Cond. Cert. [Dkt. No. 23] at 5-9). Although Defendants were well aware that Plaintiff and similarly situated employees were consistently required to perform this work at the Yard, Defendants tracked and paid employees only for work performed at the jobsite, typically an eight (8) hour day. (Compl. ¶¶ 48-49, 51-53). Indeed, Defendant Clarke testified that hours were recorded by foremen based on seven (7) or eight (8) hour days. (Dkt. No. 98, Ex. K at 61:8-15, 67:12-68:14, 69:4-10).

The Complaint makes no reference to any CBA. Plaintiff Calderon set forth the wage rate he was paid and alleged that he received supplemental benefits from Local 731. (Compl. ¶ 17). There are no other references to Local 731, much less any allegations regarding Defendants' compliance with CBA obligations. Instead, Plaintiff described his hours worked, wages paid, the specific tasks he performed at the Yard, and his knowledge that other similarly-situated workers experienced the same policies and wage violations. (*See generally* Compl.)

## II.    DEFENDANTS' PROFFERED COLLECTIVE BARGAINING AGREEMENTS

For the sake of clarity, Plaintiffs have organized the provisions cited by Defendants in support of their motion, to provide all parties with a clear overview of the terms set forth in each CBA.

**A.** **Local 731**: Effective 5/1/2022-4/30/2026, Defendants claim that the Named Plaintiff and nine (9) Opt-in Plaintiffs are covered by this CBA.

**Provisions**:

- Art. VII § 1: Hours of a workday, overtime premium for pre-shift work consisting of preparation of hazardous materials
- Art. VII § 2: shift duration and varying shift start time, meal entitlements
- Art. VII § 3: overtime premium for hours in excess of eight (8) per day
- Implied terms: Defendants' authority to determine an employee's start time

**B.** **Local 137**: Effective 3/1/2021-3/2/2025, Defendants claim that two (2) Opt-in Plaintiffs are covered by this CBA.

**Provisions**:

- Art. VIII § 1: duration of workweek and payment for days actually worked
- Art. VIII § 7: working hours, variable starting time
- Art. IX § 1: overtime for all work before and after working hours, all Saturday hours, all holiday hours, to be paid at double time rates
- Art. IX § 2: payment in 30 minute increments for hours worked before or after regular working hours or during lunch break
- Art. XXX Rule 1: when employees required to move equipment over the highway, from the job, to the yard, or to another job, they
- shall be provided transportation to starting point and paid overtime rate until transported to starting point

**C.** **Local 60**: Effective 3/28/2021-3/29/2025, Defendants claim that three (3) Opt-in Plaintiffs are covered by this CBA.

**Provisions:**

- Art IV Para. 1: employer shall arrange to convey employees to/from job
- Additional Unspecified but alluded to:
  Art. VII generally: numerous provisions regarding workday and workweek; overtime and other premiums for off-shift work, hours over 8 per day and 40 per week, Saturday and Sunday hours; variable start and lunch times.

**D.** **Local 15**: Effective 7/1/2022-6/30/2027, Defendants claim that five (5) Opt-in Plaintiffs are covered by this CBA.

**Provisions**:

- <u>Art. IX § 1</u>: workday and workweek, employer's right to pay hours worked, each worker shall be at their place of work and employed until end of shift
- <u>Art. IX § 2(a)</u>: duration and start time for shifts and meal break
- <u>Art. IX § 2(f)</u>: start and end time of workweek. Wage rate and fringe benefits for first 8 hours, overtime for work over 8 hours per day at double time.
- <u>Art IX § 4</u>: overtime at double time rates for all hours worked over 8 per day, 40 per week, all Saturday and Sunday work, all holiday work. Premiums for work during lunch, off-shift work.
- <u>Art IX § 8</u>: varying start times, premiums for off-shift work

**E.** **Local 1010**: Effective 7/1/2021-6/30/2024, Defendants claim that one (1) Opt-in Plaintiff is covered by this CBA.

**Provisions:**

- <u>Art. VII § 1</u>: workday and varying start times
- <u>Art. XIV § (4) </u>: hours of work, varying shift start, flexible schedules, payment of full rate to employees for time traveled in employer-owned vehicles for work on specified projects

**F.** **Local 1298**: Effective June 6/1/2022-5/31/2026 and 6/1/2021-5/31/2022, Defendants claim that two (2) Opt-in Plaintiffs are covered by these two CBAs.

**Provisions**:

- <u>Art IV § 5</u>: Time traveling to and from jobs, including free transportation, shall not be considered part of the workday unless it occurs during regular workday hours.

## <u>ARGUMENT</u>

## I. LEGAL STANDARDS

### A. LMRA PREEMPTION MUST BE NARROWLY CONSTRUED

The Supreme Court has repeatedly affirmed that Section 301 of the LMRA "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (discussing prior caselaw); *see also Moran v. John J. Picone, Inc.*, No. 24-cv-4095, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681, at *2 (E.D.N.Y. Sept. 30, 2025) ("the Supreme Court has also emphasized that neither the preclusive

5

effect not the exhaustion requirement of Section 301 'destroys independent, statutorily guaranteed rights' such as those in the FLSA") (citing, *inter alia*, *Barrantine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 [1981]). Yet, by suggesting that Plaintiffs may not assert wage and hour claims when they are subject to CBA with terms governing terms such as hours of work and payment of wages, Defendants seek to read LMRA extraordinarily broadly. The Supreme Court has, however, squarely rejected the proposition that mere overlap in subject matter between claims asserted in litigation and a CBA requires preemption, explaining that even where "state-law analysis might involve attention to the same factual considerations as the contractual determination… such parallelism does not render the state-law analysis dependent upon the contractual analysis." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988).

In reviewing decisions including *Allis-Chalmers v. Lueuck*, 471 U.S. 202 (1985) and *Lingle*, 486 U.S. 399, the Supreme Court concluded that its "decisions according pre-emptive effect to LMRA § 301 foreclose even a colorable argument" that a claim arising under a state wage and hour law "was pre-empted," given that "the only issue raised by [plaintiff's] claim," regarding her employer's payment of wages, "was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer." *Livadas*, 512 U.S. 124-25. The Court further found that "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Id.*, 512 U.S. 125.

As such, "[c]ourts have routinely held that the sort of unpaid wage claims under the NYLL…are 'legally independent' of wage-related provisions in a CBA and are therefore not preempted by the LMRA." *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228–29 (S.D.N.Y. 2016) (collecting cases); *see also Kaye v. Orange Reg'l*

*Med. Ctr.*, 975 F. Supp. 2d 412, 422 (S.D.N.Y. 2013) ("It is "well settled that claims pursuant to N.Y. Labor Law are truly independent of rights under the CBA."). Similar reasoning extends to FLSA claims, which likewise provides "independent statutory right[s]" that are "separate and distinct from employees' contractual rights arising out an applicable collective bargaining agreement." *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 133 (E.D.N.Y. 2011). In both FLSA and NYLL matters, plaintiffs may prevail on their wage and hour claims "regardless of whether the defendant[] paid them in the manner provided in the CBA." *McLean v. Garage Mgmt. Corp.*, No. 10-cv-3950, 2011 WL 1143003, 2011 LEXIS 32760, at *4 (S.D.N.Y. Mar. 29, 2011); *see also Kaye*, 975 F. Supp. 2d at 422–23 ("because N.Y. Labor Law § 663 creates a private cause of action to enforce the rights created under the Labor Law and corresponding regulations, and the existence of, and Defendant's compliance with, the CBAs is 'no defense to such action'").

Even if resolution of such independent statutory claims "involves attention to the same factual considerations as the contractual determination, such parallelism does not render the state-law analysis dependent upon" the CBA. *Lingle,* 486 U.S. at 408; *Polanco*, 819 F. Supp. 2d at 133–34. Therefore, "[e]ven if the CBA contains provisions and rights regarding 'after hours' works identical to those in the NYLL, such parallelism does not mandate preemption" where the facts alleged by plaintiffs "make out an independent claim under Article 19 of the NYLL," regardless of whether those same facts "constitute a violation of the CBA" that plaintiffs could have, but chose not to, plead." *Polanco*, 819 F. Supp. 2d at 134. After all, it is well-established that, as "master[] of the complaint," a Named Plaintiff may opt to construct a complaint that "raises only state-law… claims, and does not rely upon or address (or even mention) any collective-bargaining agreement," even if he possesses "substantial rights under the collective agreement… and could

have brought suit under [LMRA] § 301." *Domnister v. Exclusive Ambulette Inc.*, 607 F.3d 84, 90 (2d Cir. 2010).

Finally, as recognized by *Diaz v. N.Y. Paving, Inc.*, claims are preempted by a CBA only to the extent that the CBA actually governed the relevant time period. *See Diaz*, No. 18-cv-4910, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325, at *5 (S.D.N.Y. Apr. 24, 2025) (observing that "the Second Circuit has made it clear that § 301 exemption does not apply to an expired CBA") (quoting *Derrico v. Sheehan*, 844 F.2d 22, 26 [2d Cir. 1988]).

**B.    THE NLRA DOES NOT PREEMPT STATUTORY WAGE AND HOUR CLAIMS**

In *San Diego Bldg. Trades Council v. Garmon*, the Supreme Court provided for preemption of claims pertaining to activities that "are protected by § 7 of the National Labor Relations Act, or constitute an unfair practice under § 8." *Garmon*, 359 U.S. 236, 244 (1959). Activities protected under Section 7 include the right of workers "to form, join, or assist labor organizations, to bargain collectively through representatives of their choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," while unfair labor practices including "interfering with the exercise of employees' rights under Section 7; 'dominat[ing] or interfer[ing] with the formation or administration of any labor organization'; encouraging or discouraging membership in a labor organization… 'discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges or given testimony' and 'refus[ing] to bargain collectively with the representatives of his employees.'" *Moran*, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681, at *13 (quoting 29 U.S.C. §§ 157, 158(a)).

As the Second Circuit explained in *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 85 (2d Cir. 2015), "*Garmon* preemption should not be lightly inferred," since labor standards set by laws like the NYLL fall within a state's "broad authority" to set "substantive labor

standards" as "a baseline for employment negotiations." Accordingly, *Garmon* precedent "implicitly support[s] the idea that the actual payment of allegedly improper wages, in contravention of the overtime provisions of the FLSA and NYLL, is not itself an unfair labor practice implicating Sections 7 or 8 of the NLRA and requiring *Garmon* preemption." *Moran*, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681, at *15.

While FLSA and NYLL claims are occasionally preempted by *Garmon*, these instances directly implicate rights to collective bargaining protected by the NLRA and not merely unpaid wages. For example, NYLL claims for improper deduction of union dues and FLSA and NYLL retaliation consisting of being "tricked" into signing union membership cards were found to be preempted by *Garmon*, as these claims "much more clearly implicated the NLRA provisions that trigger preemption or preclusion." *Moran*, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681, at *15-16 (discussing *Figueroa-Torres v. Kleiner*, No. 20-cv-4851, 2022 WL 768483, 2022 U.S. Dist. LEXIS 45018 [S.D.N.Y. Mar. 14, 2022] and distinguishing such claims from FLSA and NYLL overtime claims, which were found not preempted).

## II. PLAINTIFFS' WAGE AND HOUR CLAIMS NOT PREEMPTED

### A. WAGE AND HOUR CLAIMS RESTING ON AN INDEPENDENT STATUTORY RIGHT ARE NOT PREEMPTED

Plaintiff, individually and on behalf of a collective and class, asserts just three (3) causes of action: unpaid overtime under the FLSA, unpaid gap-time wages under the NYLL, and unpaid overtime under the NYLL. (*See* Compl. ¶¶ 56-69). All causes of action arise from hours that Defendants required him to perform various work duties at the Yard. (*See generally id.*). None pertain in any way to any CBA, allege Defendants' failure to abide by the CBA, invoke rights or wages due under the CBA, or require interpretation of any portion of a CBA. Indeed, courts consistently reject arguments that "[statutory] claims necessitate an interpretation of the CBA to

determine how employees' hours of "work" are defined and how such hours should be calculated." *Polanco*, 819 F. Supp. 2d at 135.

In *Berger v. New York Univ.*, the Court found that where a plaintiff "asserts no purported rights on the CBA" but rather "contends only (1) that there are parts of the work day" before and after regular shifts "for which NYU's guards are not paid and (2) that state labor law entitles the guards to  payment, including overtime pay where applicable, for this uncompensated time," "the disputed issues… are whether NYU has in fact paid its guards for this time and whether the guards have worked additional, uncompensated hours beyond this time," such that "resolving these issues will require into the facts on the ground, not the terms of the CBA." *Berger*, No. 19-cv-267, 2019 WL 3526533, 2019 U.S. Dist. LEXIS 129691, at *6-7 (S.D.N.Y. Aug. 2, 2019). Once such facts are established, the sole remaining task is "determining whether New York statutory law creates a right to compensation for the time a worker spends on any given task, irrespective of the terms and her employment contract," which is "a state-law matter that does not require interpretation of the CBA." *Id.* Under similar facts, the Court in *McLean v. Garage Mgmt. Corp.* noted that although the CBA at issue contained provisions regarding overtime pay, "compliance with [N.Y.C.R.R] § 142-2.2 can be enforced without reference to the CBA's overtime pay requirements," such that "Plaintiffs… may prevail on their state law claims regardless of whether the defendants paid them in the manner provided in the CBA." *McLean*, No. 10-cv-3950, 2011 WL 1143003, 2011 U.S. Dist. LEXIS 32760, at *9-*10 (S.D.N.Y. Mar. 29, 2011).

As Plaintiffs have "not raised a dispute under the CBAs" and instead seek "to assert rights provided by New York law… it is of no moment that Plaintiff might have alleged the facts at issue here to argue that Defendant had violated the CBAs." *Arroyo v. NYU Langone Hosp.*, No. 19-cv-1624, 2019 WL 5682628, 2019 U.S. Dist. LEXIS 189531, at *13 (S.D.N.Y. Oct. 31, 2019)

(similarly rejecting argument that CBA defines work is deemed "work," finding that defendant "failed to show that New York looks to the terms of the relevant employment contract to decide what portions of the workday are compensable under state labor law"). Although Plaintiffs worked under various CBAs, they are "not required to plead the CBA… and may assert state law causes of action without reliance on the CBA," particularly where such claims are "not substantially dependent upon an interpretation or analysis of the CBA" and "no analysis of interpretation of [a] CBA term is required." *Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 501 Misc.3d 201, 209-210 (N.Y. Cty. Sup. Ct. Sept. 9, 2015) (quoting *Kaye*, 975 F. Supp. 2d at, 419).

The mere fact "that Plaintiff could have asserted his claims under the CBA does not, without more, require preemption of those claims." *Kaye*, 975 F. Supp. 2d at 423-24 (also rejecting arguments that provisions setting forth rates of pay, regular work week, and regular work day were "sources of ambiguity," finding that these provisions were "straightforward and unambiguous"). If Plaintiffs can prove the facts they have alleged, they can establish violations of the NYLL, which provide a right to compensation that is independent of any CBA terms. *Arroyo*, 2019 WL 5682628, 2019 U.S. Dist. LEXIS 189531 , at *12-14 (noting that it is irrelevant that the same facts may also be relevant to a hypothetical dispute under the CBA).

Defendants' compliance with the CBA, including payment of daily or weekend premiums and payment of premiums for time spent preparing to handle hazardous materials, is simply irrelevant. *Isaacs v. Cent. Parking Sys. of New York, Inc.*, No. 10-cv-5636, 2012 WL 957494, 2012 U.S. Dist. LEXIS 38103, at *11 (E.D.N.Y. Feb. 27, 2012). ("The CBAs' conferral of shift differential, longevity pay, and vacation pay rights has no relevance to whether… [plaintiff] was required to work without any pay at all after each of his shifts"). As "there is no actual dispute

over the rights and obligations and set out by CBA's terms," Plaintiffs' statutory wage claims are not preempted by the LMRA. *Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, No. 17-cv-840, 2023 WL 4421699, 2023 U.S. Dist. LEXIS 117473, at *14 (S.D.N.Y. July 7, 2023) ("many courts have found that FLSA overtime claims are not preempted by LMRA" where there is no such dispute regarding the CBA) (citing cases). In cases where plaintiffs "seek to recover compensation granted by a CBA's wage differential provisions," such claims are preempted by the CBA, as evaluation of such claims requires interpretation of said provision; "here, however, Plaintiff expressly does not allege entitlement to any shift differentials or any differential payments… so any provisions of the CBAs relating to differential payments would not establish LMRA preemption." *Arroyo*, 2019 WL 5682628, 2019 U.S. Dist. LEXIS 189531, at *15; *see also Ramirez v. RiverBay Corp.*, 35 F. Supp. 3d 513, 523-24 (S.D.N.Y. 2014) (as "plaintiffs do not allege that the CBAs were breached or that the plaintiffs are owed any nighttime differential pay under the terms of the CBAs… there is no genuine issue between the parties concerning interpretation of the CBA" that would justify LMRA preemption) (internal citation omitted).

Even Plaintiffs' hourly rate, which must be established for calculating overtime premiums, is set forth in Plaintiffs' paystubs. Moreover, even if reference to the CBA were required to determine Plaintiffs' hourly rate, it is well established that "preemption is not triggered by the mere fact that a court will need to consult the CBA to determine the appropriate rate of pay for any periods as to which liability is found." *Berger*, 2019 WL 3526533, 2019 U.S. Dist. LEXIS 129691, at *13.

New York state law pertaining to preemption of NYLL claims is instructive; this makes sense, given that the doctrine is largely shaped by Supreme Court precedent. The New York Appellate Division, First Department held that "Section 301" of the LMRA "does not preempt

state claims when state law confers an independent statutory claim… as long as the state-law claim can be resolved without interpreting the CBA itself." *Tamburino v. Madison Sq. Garden, LP*, 115 A.D.3d 217, 221 (1st Dept. 2014) (citing *Livadas*, 512 U.S. at 123 and quoting *Mack v. Metro-North Commuter R.R.*, 876 F. Supp. 490, 492, fn. 1 [S.D.N.Y. 1994]). The First Department went on to reject an argument very similar to that raised by Defendants here, that an NYLL claim—there, for unpaid gratuities—was preempted by a CBA, finding that "the claims for gratuities do not require an interpretation of the CBA," which is made abundantly clear by the fact that "plaintiffs may prevail on their claims regardless of whether [defendant] distributed the gratuities to its employees in the manner provided by the CBA." *Tamburino*, 115 A.D.3d at 222. Importantly, the First Department made this ruling in spite of several "factual considerations" that overlapped between plaintiff's claim for unpaid gratuities and matters addressed by the CBA including the employer's "obligation with regard to conditions under which gratuities must be distributed and the manner of distribution of gratuities to different classifications of employees," as well as a mandatory grievance procedure requiring that all disputes arising out of the CBA must be asserted through arbitration. *Tamburino*, 115 A.D.3d 220. However, this "parallelism" was ultimately incapable of sustaining a finding of preemption where "plaintiff's theory is not that [defendant] did not provide what the CBA required but that [defendant] withheld portions of the gratuities in violation of Labor Law § 196-d." *Tamburino*, 115 A.D.3d at 222.

In other words, Second Circuit courts and New York state courts are in perfect accord: plaintiffs are able to pursue wage-and-hour claims for work, including work performed outside of normal working hours, independently of a CBA, and such claims are not preempted. *See, e.g., Gyecsek v. J.P. Hogan Coring & Sawing, Corp.*, No. 18-cv-1023, 2019 WL 1059998, 2019 U.S. Dist. LEXIS 36074, at *9 (S.D.N.Y. Mar. 6, 2019) (because plaintiffs' FLSA and NYLL claims

were "truly independent of rights under the CBA," no preemption exists "even if the CBA separately provided for overtime compensation," as "it was Plaintiff's prerogative to bring his claims under state and federal law").

**B.      THE CBAs ARE ONLY TANGENTIALLY RELEVANT TO PLAINTIFFS' CLAIMS**

In seeking dismissal of Plaintiffs' claims, Defendants rely on *Diaz v. New York Paving, Inc.*, No. 18-cv-4910, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325 (S.D.N.Y. Apr. 24, 2025) (Defs.' MOL, *passim*) and in their pre-motion letter, on *Cruz v. C.A.C. Industries, Inc.*, Index. No. 805294/2024E, NYSCEF Doc. No. 25 (Bx. Cty. Sup. Ct. May 2, 2025) ("*Cruz I*"). (Dkt. No. 50 at 2). An analysis of these two matters proves beyond doubt that Defendants' motion must fail.

At first glance, *Diaz* would appear to support Defendants' position, as the Court dismissed the claims of certain Local 1010 members based upon LMRA preemption. *Diaz*, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325, at *7-8. However, the basis of dismissal of those claims is crucial to understanding the justification for dismissal—as are the nature of the claims that the Court did not dismiss. The *Diaz* defendants sought to dismiss the claims of plaintiffs belonging to Local 1010 and Local 175. They were largely unsuccessful because only one document actually contained provisions sufficiently specific to justify dismissal: a 2024 Memorandum of Agreement entered into by Local 1010 (the "2024 MOA"). The 2024 MOA contained language specifically "makes clear that as of March 2024, non-drivers were not required to do preliminary or postliminary work." *Diaz*, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325 at *5-6. Therefore, Plaintiffs' allegations that they were required to perform pre- and post-shift work without pay "directly contradicts the express terms of the March 2024 MOA." *Id.*, at *6.

Importantly, the *Diaz* court declined to dismiss the claims of members of Local 1010 who were not members of the union during the effective period of the MOA, in other words, who were

not subject to the pre- and post-shift provision. *Diaz*, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325 at *8 (finding only "Local 1010 Plaintiffs' post-March 2024 claims… preempted"). The Court moreover refused to dismiss claims for other union members, finding that the prior Local 1010 CBA and Local 175 CBA were "silent on this issue—whether pavers were required to do preliminary or postliminary work—there is no need to interpret the CBAs to answer this question." *Id.*, at *4.

*Cruz v. C.A.C. Industries, Inc.* is even less helpful to Defendants. As indicated in Defendants' pre-motion letter, the Bronx County Supreme Court granted a motion to dismiss on similar grounds sought by Defendants here, finding NYLL claims of a Local 731 member preempted by the LMRA. (Dkt. No. 50, at 2). *See Cruz I*, NYSCEF Doc. No. 25. However, upon plaintiffs'[1] motion for reargument, the Court reversed the initial dismissal, holding that "the Court erroneously concluded that plaintiff's claims are preempted by the LMRA because he is seeking his regular rate of pay," finding that "calculating those damages [for gap-time and overtime claims] will not require interpreting the CBA, but rather, merely applying the wage rates set forth therein" and that, importantly, "the CBA is silent as to whether plaintiff was required to report to the yards either before or after his shift." *Cruz v. C.A.C. Industries, Inc.*, Index No. 805294/2024E, NYSCEF Doc. No. 38, at *3, *14 (Bx. Cty. Sup. Ct. Oct. 21, 2025) ("*Cruz II*").

Notably also, both *Diaz* and *Cruz* rejected arguments attempting to read "practice or custom of requiring or not requiring preliminary or postliminary work" into the CBAs, as "resolving whether there was a past practice or custom will require testimony and evidence," no part of which "involves passing reference to the… CBAs." *Diaz*, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325, at *4-5; *Cruz II*, NYSCEF Doc. No. 38, at *14 ("To the extent that defendant

---

[1] This office represents the plaintiffs in the *Cruz* matter.

contends that the CBA includes implied terms established through long-standing past practices, and by virtue of the uniform practices of work in the construction industry in New York, resolving the issue of whether plaintiff was required to perform pre-shift and post-shift work will require testimony and evidence entirely outside the CBA").

Preemption is inappropriate here for similar reasons as in *Mazur v. UGS Herman, LLC*, where the Court found that while certain provisions of the CBA at issue "refer[] to pay or payroll generally," such provisions "do not need to be interpreted to resolve Plaintiffs' NYLL claim" where defendants fail to "cite to any provision of the CBA that… conceivably implicate or waive Plaintiffs' NYLL claims." *Mazur*, No. 23-cv-8839, 2024 WL 3952600, 2024 U.S. Dist. LEXIS 153813, at *5, *6 (S.D.N.Y. Aug. 27, 2024). Here too, while there is certainly factual overlap, Defendants provide no actual question raised by Plaintiffs' claims that can only be answered by reference to a CBA. For example, Defendants allude to numerous provisions requiring shift differentials and pertaining to variable start times. Yet Plaintiffs do not seek wage premiums for off-shift work, nor do Plaintiffs seek overtime premiums for weekend pay, holiday pay, or double-time rates for any work. Plaintiffs do not allege that Defendants provided a free transportation service or seek wages for free transportation benefits. Plaintiffs allege that they performed work and were not paid legally-required overtime premiums of 1.5 times their regular hourly rate for such work when it exceeded forty (40) hours per week. *See Severin v. Project OHR, Inc.*, No. 10-cv-9696, 2011 WL 3902994, 2011 U.S. Dist. LEXIS 99839, at *13, fn. 6 (S.D.N.Y. Sept. 1, 2011) (contrasting matters where "each plaintiff's claim hinged on an interpretation of a collective bargaining agreement" with minimum wage and overtime claims that "are legally independent of the CBA," finding that "No provision of the CBA needs to be interpreted to decide either of these

statutory claims"). To the extent that a finder of fact finds that no such work was performed, no wages are owed.

The CBAs at issue provide for payment of wage premiums in excess of what is required by New York law, including where laborers work in excess of eight (8) hours per day, Saturday and Sunday work, work on certain holidays, and time spent preparing to handle hazardous materials. (*Supra* at Statement of Facts § 2). They moreover contain provisions as to meal breaks, shift differentials, holiday pay, and variable start times. (*Id.*) The claims asserted here by Plaintiffs do not refer in any way to any of these matters.

For this reason, Defendants' reliance upon *Sejdija v. First Quality Maintenance LP* is misplaced. *Sejdija*, No. 22-cv-4487, 2023 WL 2118029, 2023 U.S. Dist. LEXIS 27556 (S.D.N.Y. Feb. 17, 2023). (Defs.' MOL at 23-24). While inapposite on its facts, this decision is instructive as to the types of claims that are found to be preempted by the LMRA. In *Sejdija*, plaintiffs' two (2) primary claims for unpaid wages directly implicated express terms of the applicable CBA as to: whether the value of an apartment should be included in calculating hourly wages and whether plaintiff should receive overtime premiums for hours spent working outside his normal work hours. *Sejdija*, 2023 WL 2118029, 2023 U.S. Dist. LEXIS 27556 at *2, *10. The CBA at issue spoke directly to both issues. As to proper calculation of the hourly rate, it provided that "the value of the apartment and services provided therewith… shall not be treated as or included for any purpose in the wage…" *Id.*, at *8. As to overtime, it provided for payment of one and one-half times plaintiff's regular rate for "emergency work." *Id.*, at *10-11.  As such, the Court had no choice but to conclude that "key elements of the plaintiff's claims… [are] controlled by the collective bargaining agreement" because "resolving the question… would be inextricably intertwined" with the CBA and "would therefore require an interpretation of the terms" of the

CBA. *Id.* at \*8-9, \*11. Preemption was found in *Vera v. Saks & Co.* on similar grounds, *i.e.*, that plaintiffs' claims directly implicated the CBA. *Vera*, 335 F.3d 109 (2d Cir. 2003). (*See* Defs.' MOL at 23). The Court noted that "plaintiff's complaint challenges the legality of a term of the CBA" and moreover that plaintiff's claim for vested commissions necessarily implicated interpretation of whether the CBA altered the NYLL default rule regarding when commissions are deemed to vest. *Vera*, 335 F.3d at 115-16.

It is certainly plausible that a CBA could address the claims raised by Plaintiffs here, such that preemption would be appropriate, as in fact occurred in *Diaz*. As in that matter, a provision of the pertinent CBA providing that "non-drivers were not required to do preliminary or postliminary shift works" would "directly contradict" Plaintiffs' claims and allegations. *Diaz*, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325, at \*4. Defendants here, however, point to no such provision. Indeed, although one opt-in plaintiff belonged to Local 1010, Defendants do not attach a CBA containing the same language as the 2024 MOA found preemptive in *Diaz* but rather a broad CBA, comparable in many ways to the Local 731 CBA analyzed by the *Cruz* court. (*Supra* at 14-16 [discussing the *Cruz* decisions]; Defs.' MOL at 20-21; *compare* Doc. No. 98, Ex. D [Local 731 CBA] *with* Ex. H [Local 1010 CBA]).

Nor do Defendants provide the Court with any other provisions that require interpretation to resolve the dispute that is central to Plaintiffs' claim: whether they performed unpaid work at the Yard and otherwise. Certainly there is factual overlap between the CBAs and Plaintiffs' claims: the CBAs provide provisions for payment of overtime and shift differentials in various contexts. (*Supra* at Statement of Facts § 2). Yet Plaintiffs at no time seek more than what is required by the FLSA and NYLL, which in no way contradicts or exceeds wages provided by the CBAs. Notably, where there is overlap (*i.e.*, as to overtime of 1.5 premiums for hours worked over 40), Plaintiffs

18

do not seek such wages under the aegis of the CBA but simply under the FLSA or NYLL. Whether or not such wages are awarded will have no impact on Defendants' obligations under the CBA.

One area of "factual overlap" between Plaintiffs' claims and the CBAs pertains to travel time provisions in two (2) of the CBAs: Local 1298 and Local 1010. The Local 1010 CBA states that employees are to be provided their full rate of pay for transportation time in company-owned vehicles to certain specified projects. (*Supra* at 5). While this payment is similar to what Plaintiffs request in this action, Plaintiffs do not seek payment of wages under this provision, nor does this provision in any way contradict, interfere with, or invalidate the damages requested by Plaintiffs, which simply consists of their regular rate of pay, at that appropriate straight-time or overtime rate. Defendants' assertion that *Diaz* requires preemption of this claim in particular, given that it arises under the Local 1010 CBA (Defs.' MOL at 21-22) is mistaken, as *Diaz* found preempted solely claims arising under the 2024 MOA, not the Local 1010 CBA, finding that only the 2024 MOA specifically addressed and contradicted plaintiffs' claims for travel time. (*Supra* at 14-15).

The Local 1298 CBA similarly does not preempt Plaintiffs' claims as it does address pre- or post-shift work at the Yard or compensation for such work. If Plaintiffs requested wage premiums because pre-shift work, including travel time, was performed outside the CBA-defined "workday" and therefore payable at off-shift rates, then Defendants would be correct that such a claim would require interpretation of these sections of the Local 1298 CBA. (*See* Dkt. No. 98, Ex. I Art. IV §§ 1, 2, 5 [setting workday hours, providing for overtime premiums for off-shift work, stating the transportation is not deemed part of the workday; Ex. J Art. IV §§ 1, 2, 5 [same]). Plaintiffs do not request off-shift premiums, nor is it relevant to the factual inquiry regarding plaintiffs' performance of—and compensation for—pre-shift and post-shift Yard work whether any plaintiffs enjoyed a "free transportation service." (*Id.*). The Complaint "raises no contention

that an employer failed to properly apply the pay rate framework set out in a CBA," but instead "involves a claim that [plaintiff] was required to work without any pay at all" for pre- and post-shift work. *Berger*, No. 19-cv-267, 2019 WL 3526533, 2019 U.S. Dist. LEXIS 129691 at *12 (internal quotations omitted). *See also Eldred v. Comforce Corp.*, No. 3:08-cv-1171, 2010 WL 812698, 2010 U.S. Dist. LEXIS 18260, at *15-17 (N.D.N.Y. Mar. 2, 2010) (finding no preemption for FLSA overtime claim for unpaid travel time, as "the right to this compensation does not spring from the CBA, nor does the CBA… provide any basis for the Court's inquiry into the validity of the claim raised, but finding preemption for claim that employer's change in travel time policy "violated the CBA").

Defendants cannot identify any portion of Plaintiffs' FLSA and NYLL overtime claims that requires interpretation of the CBA on the issue of hours worked. It is therefore irrelevant whether Plaintiffs performed work "preparing for hazardous materials," whether Plaintiffs performed their unpaid pre-shift and post-shift work within a "workday" as defined by the various CBAs, whether they worked through lunch, whether they worked on weekends or holidays, or any other fact on which CBA premiums depend. (*See* Defs.' MOL at 12-13).

**C.    *GARMON* PREEMPTION DOES NOT PREVENT THIS COURT FROM ADJUCATING PLAINTIFFS' CLAIMS**

*Garmon* does not prevent the Court from considering Plaintiffs' claims under the NYLL. Indeed, the Second Circuit recently observed that "complying with valid state and federal statutes that are not themselves preempted or precluded by the NLRA does not, without more, trigger *Garmon* preemption," thus precluding Defendant's alternate argument regarding NLRA preemption, which likewise must fail. *Cortese v. Skanska Koch, Inc.*, App. No. 21-473, 2023 WL 8368858, 2023 U.S. App. LEXIS 31876, at *5-6 (2d Cir. Dec. 4, 2023).

Indeed, "Defendants have not identified a single case in which preclusion or preemption was found under *Garmon* in these circumstances," relying almost solely on the uncontroversial principle that Defendants may not unilaterally terminate or modify a CBA. (Defs.' MOL at 25). *Moran*, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681, at *14. This lacunae in Defendants' briefing is hardly surprising, given that "the case law supports the conclusion that Plaintiff's FLSA and NYLL overtime claims are not precluded or preempted under *Garmon*." *Id.*, at *14-15.

Similar to LMRA preemption, *Garmon* preemption is not automatically triggered merely because a state law may overlap with NLRA provisions. While it is unclear from Defendants' Motion what specific conduct regulated by the NLRA Defendants claim to be implicated by Plaintiffs' FLSA and NYLL claims, even if Defendants could identify any conduct arguably protected or prohibited by the NLRA, it has not shown that the controversy at issue here is "identical to one" that could have been raised before the National Labor Relations Board. *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006) (discussing steps to determine applicability of *Garmon* preemption). Defendants' failure to pay overtime wages does not implicate either a protected activity or an unfair labor practice as enumerated by the NLRA. (*Supra* at 8 [identifying protected activities and unfair labor practices]). Indeed, the Second Circuit has recently clarified that although the NLRA limits states from regulating "the process… of labor negotiations,", it does not restrict their power to establish minimum labor standards that apply to all employees, union and non-union, and moreover affirmed that "laws establishing substantive labor standards are compatible with the NLRA's animating purpose." *Rest. Law Ctr. v. City of New York*, 90 F.4th 101, 106 (2d Cir. 2024).

While *Garmon* held that the NLRA preempts state statutes in matters falling within the exclusive jurisdiction of the NLRB, the state law claims at issue here do not hinge on a question

of unfair labor practices that would fall within the NLRB's jurisdiction. *See Moran*, 2025 WL 2783596, 2025 U.S. Dist. LEXIS 193681, at *15 ("the allegation that a defendant-employer's payment of actual wages to an employee violated the overtime provisions of the FLSA and NYLL differs markedly from claims under those statutes where *Garmon* preemption has been found to apply."). To prevail on their claims, Plaintiff and the Class Members must show that they were not compensated for work performed and that Defendants had knowledge of that work, which is fundamentally different from an unfair labor practice charge that would require proof of collective bargaining violations.

As the *Diaz* court found, simply yet accurately, Defendants' attempt to dismiss this action based on *Garmon* preemption is "without merit." *Diaz*, 2025 WL 1220924, 2025 U.S. Dist. LEXIS 78325, at *8.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

Dated: New York, New York
      February 25, 2026                      **PELTON GRAHAM LLC**


By: */s Brent E. Pelton*
Brent E. Pelton
Taylor B. Graham
Joanne M. Albertsen
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the FLSA Collective and the putative Class*