UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

MANUEL ANGEL CALDERON, Individually and On
Behalf of All Others Similarly Situated,

Case No.: 1:24-cv-05442(ALC)(BCM)

*Plaintiff*,

-against-

NETWORK INFRASTRUCTURE, INC. and PATRICK
CLARKE, Jointly and Severally,

*Defendants*.

---------------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FILED BY PLAINTIFFS

**KAUFMAN DOLOWICH LLP**
*Attorneys for Defendants*

.

135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 681-1100 F: (516) 681-1101

Andrew Richards, Esq.
Edward Grimmett, Esq.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii-iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..............................................................................................................................1

POINT I .......................................................................................................................................1

PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA .......................................................1

    A.  The Local 1298 Plaintiffs' Claims Are Preempted ............................................3
    B.  The Loc al 1010 Plaintiff's Claims Are Preempted ..........................................4
    C.  The Local 731, Local 137, Loc al 15, and Local 60 Plaintiffs' Claims Are Preempted ...4
    D.  The Court Must Also Consider the CBAs' Implied Terms ................................6
    E.  The Cases Relied Upon By Plaintiffs Are Distinguishable ...............................7

POINT II ....................................................................................................................................10

PLAINTIFFS CLAIMS ARE PREEMPTED BY THE *GARMON* DOCTRINE ..........................10

CONCLUSION..........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                            **Page**

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)..............................................................................................................3

*Arroyo v. NYU Langone Hosp.*,
2019 WL 5682628 (S.D.N.Y. 2019) ...................................................................................10

*Berger v. New York Univ.*,
2019 WL 3526533 (S.D.N.Y. 2019) .....................................................................................9

*Chu v. Chinese-American Planning Council Home Attendant Program, Inc.*,
194 F.Supp.2d 221 (S.D.N.Y. 2016) .....................................................................................7

*Cruz v. C.A.C. Industries, Inc.*,
Index No. 805294/2024E ...................................................................................................3, 6

*Diaz v. New York Paving Inc.*,
2025 WL 1220924 (S.D.N.Y. 2025)......................................................................1, 3, 6, 10

*Domnister v. Exclusive Ambulette Inc.*,
607 F.3d 84, 90 (2d Cir. 2010) ..............................................................................................7

*Gyecsek v. J.P. Hogan Coring & Sawing Corp.*,
2019 WL 1059998 (S.D.N.Y. 2019) ...................................................................................10

*Hoops v. KeySpan Energy*,
794 F.Supp.2d 371 (E.D.N.Y. 2011) .....................................................................................1

*Isaacs v. Cent. Parking Sys. of New York, Inc.*,
2012 WL 957494 (E.D.N.Y. 2012)........................................................................................9

*Johnson v. D.M. Rothman Co.*,
861 F. Supp.2d 326 (S.D.N.Y. 2012) .....................................................................................8

*Kaye v. Orange Reg'l Med. Ctr.,*
975 F. Supp.2d 412 (S.D.N.Y. 2013).....................................................................................7

*Mazur v. UGS Herman, LLC,*
2024 WL 3952600 (S.D.N.Y. 2024) ......................................................................................9

*McLean v. Garage Mgmt. Corp.*,
2011 WL 1143003 (S.D.N.Y. 2011)......................................................................................8

*Morrell*,
2021 WL 3185608 (S.D.N.Y. 2021).................................................................................6

*Polanco v. Brookdale Hosp. Med. Ctr.*,
819 F. Supp.2s 129 (E.D.N.Y. 2011).................................................................................8

*Ramirez v. RiverBay Corp.*,
35 F. Supp.3d 513 (S.D.N.Y. 2014)..................................................................................

*San Diego Building Trades Council v. Garmon,*
339 U.S. 236 (1959)..........................................................................................................10

*Tamburino v. Madison Sq. Garden, LP*,
115 A.D.3d 217 (1st Dep't 2014) .....................................................................................8

| **Rules** | **Page** |
|---|---|

Fair Labor Standards Act ................................................................................................1, 2

Fed. R. Civ. P. 12(b)(1) ..................................................................................................1, 11

New York Labor Law.................................................................................................1, 2, 7, 8

**PRELIMINARY STATEMENT**

Defendants, Network Infrastructure Inc. ("Network") and Patrick Clarke (collectively, the "Defendants"), respectfully submit this Reply Memorandum of Law in further Support of their Motion to Dismiss the Complaint filed by the Named Plaintiff, Manuel Angel Calderon (the "Named Plaintiff"), as well as the claims of the twenty-two Opt-in Plaintiffs (collectively, the "Plaintiffs"), in their entirety pursuant to Fed. R. Civ. P. 12(b)(1) (the "Motion").

**ARGUMENT**

**POINT I**

**PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA**

Plaintiffs' claims are preempted because the Court must interpret numerous collective bargaining agreement ("CBA") provisions to determine whether Plaintiffs should be compensated for alleged travel time and/or their pre/post shift presence at Network's Yards. As the evidence establishes, Plaintiffs do not have independent right under the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA") because taking advantage of a free transportation benefit is not compensable under the law.  Thus, a finding of preemption is warranted given that Plaintiffs must establish a breach of the CBAs to recover alleged unpaid wages.

The Court must overlook Plaintiffs' narrow and inaccurate interpretation of this Court's holding in *Diaz v. New York Paving Inc.*, 2025 WL 1220924 (S.D.N.Y. 2025).  Plaintiffs are seemingly aware that the *Diaz* decision poses problems to their case.  Given that Plaintiffs are incapable of avoiding the fact that the applicable CBAs are "inextricably intertwined" with their claims, they argue that the CBAs are only "tangentially" relevant. *See* Opposition at pg. 14. Plaintiffs also concede that "[a]t first glance, *Diaz* would appear to support Defendants' position." *Id.*  Plaintiffs then advance a tortured reading of *Diaz* by claiming that their claims can only be

1

preempted if the precise contractual language in Local 1010's 2024 Memorandum of Agreement (the "2024 MOA") exists.

The preemption inquiry set forth in *Diaz* is much broader than the flawed interpretation advanced by Plaintiffs. As this Court recognized, LMRA preemption comes down to a general analysis of "whether evaluation of the claim is inextricably intertwined with consideration of the terms of the CBAs." *Diaz*, 2025 WL 1220924, at *2. To determine this, the relevant inquiry is whether Plaintiffs' claims fall within the first category set forth in *Hoops v. KeySpan Energy*, 794 F.Supp.2d 371, 379 (E.D.N.Y. 2011). As is the case here, the Court found that the first *Hoops* category was applicable because plaintiff's claims "concern[ed] whether the employee is entitled to be paid – at all – for pre and post shift presence/work, or whether, as Defendants claim this was part of a voluntary transportation service." *Id.* at *3.

The same issue is present here. The testimony, evidence, and CBA provisions set forth in Defendants' Motion establish that Plaintiffs generally were not entitled to compensation for their presence at the Yard and receiving free transportation to/from the jobsite.[1] Plaintiffs, on the other hand, contend that they were required to do pre and post shift presence/work, which is compensable regardless of what is stated in the CBA. The Court in *Diaz* shot down this same exact theory because Plaintiffs "cannot . . . prove that the Defendant[s] required pre and post shift work without simultaneously proving that Defendant breached the [CBAs]." *Id.*

As further set forth herein, Plaintiffs do not have an independent right to compensation under the NYLL or FLSA when Network is assisting them with their commute to the jobsite. Thus, the only way Plaintiffs can establish that they have a viable claim is to demonstrate that Defendants

---

[1]    As further discussed herein, there are circumstances in which an employee may be entitled to compensation for arriving at the Yard earlier than their designated shift. This would require the Court to interpret the applicable CBAs to determine whether Network varied the commencement of Plaintiffs' shift.

violated the CBAs.  In what is a theme throughout the Opposition, Plaintiffs repeatedly argue that interpretation of the CBAs is not required because the Complaint does not assert a CBA violation or seek benefits under same.  If the Court were to adopt this nonsensical argument, a case would never be preempted under the LMRA.  Plaintiffs' counsel, who has experience litigating these types of claims[2], is capable of artfully drafting a complaint that avoids allegations related to potential CBA violations. Instead, Courts must review the relevant CBA provisions and its implied terms (regardless of the allegations) to determine whether the claims are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

A.  **<u>The Local 1298 Plaintiffs'[3] Claims Are Preempted</u>**

The Local 1298 Plaintiffs cannot overcome the express provision in the Local 1298 CBA that memorializes Network's free transportation service.  This provision states that the "[t]ime traveling to and from jobs, including free transportation by the contractor shall not be considered part of the workday unless it occurs during regular workday hours." *See* Declaration of Edward Grimmett, Esq. ("Grimmett Decl."), Exhibits I and J (ECF Docket No. 98).  Simply put, the Local 1298 Plaintiffs' claims are preempted because they are seeking compensation for the time spent traveling to and from the jobsite. Any argument to the contrary is unavailing.

The Court must disregard the Local 1298 Plaintiffs' attempt to narrow the holding in *Diaz*, 2025 WL 1220924, at *2.  Even if there are minor differences between the Local 1298 CBA and Local 1010's 2024 MOA, the Local 1298 Plaintiffs must establish the Defendants alleged non-payment of wages for pre/post shift presence/work and travel time violated the "free

---

[2]     In the Opposition, Plaintiffs' counsel acknowledges that their office represents the plaintiffs in *Cruz v. C.A.C. Industries, Inc.*, Index No. 805294/2024E.

[3]     The Local 1298 Plaintiffs are Francisco Onofre and Carlos Fernandez.

transportation" provision.  The correct interpretation of this provision is that any alleged tasks that may be incidental to receiving this "free transportation" is **not** compensable (especially when considering past practice).  Nevertheless, to the extent that the Local 1298 CBA does not expressly address tasks that were allegedly performed prior to receiving free transportation, the Court would still be required to interpret the Local 1298 CBA as it relates to travel time.

## B. **The Local 1010 Plaintiff's[4] Claims Are Preempted**

The Local 1010 Plaintiff similarly argues that the Local 1010 CBA must replicate the 2024 MOA for his claims to be preempted. Again, *Diaz* does **not** stand for the proposition that a claim of this nature will only be preempted when the exact contractual language in the 2024 MOA is present.  The relevant inquiry is whether the Local 1010 CBA addresses whether he is entitled to any compensation for travel time and/or allegedly performing pre/post shift work.  To that end, Article XIV, Section 4 of the Local 1010 CBA expressly addresses, among other things, whether travel time is compensable. *See* Grimmett Decl., Ex. H. To be entitled to compensation for travel time, the Local 1010 Plaintiff must be performing "Specialty and Line Striping projects." *Id.* Because the Court would be required to interpret whether the Local 1010 Plaintiff was performing "Specialty and Line Striping projects," his claims are preempted.

## C. **The Local 731, Local 137, Local 15, and Local 60 Plaintiffs' Claims Are Preempted[5]**

As mentioned in greater detail in the Motion, Plaintiffs would need to establish that Defendants breached the Local 731, Local 137, Local 15, and Local 60 CBAs to prevail on their claims. While all of the provisions at issue are further set forth in Defendants' Motion, Plaintiffs

---

[4]    The Local 1010 Plaintiff is Christian Barajas.

[5]    The Local 731 Plaintiffs are Manuel Angel Calderon, Thomas Doyle, Imar O'Hagan, Joseph Ryan, Evan Kuveke, Sabbato Perno, Austin Soldano, Eduardo Fonseca, Carlos Fuentes, and Manual Tama.  The Local 137 Plaintiffs are Gabriel Quezada and Allan Cole. The Local 15 Plaintiffs are Robert Bapst, Manuel Mendoza, Michael Gounarides, Elie Ilan, and Keith Dunn.  The Local 60 Plaintiffs are Jose De Jesus Ceja-Diaz, Lourenco Alves, and Rafael Gonzalez.

completely avoid a substantive discussion related to several key CBA provisions. Tellingly, Plaintiffs fail to offer any substantive analysis concerning Network's authority to vary to the commencement of Plaintiffs' shifts. *See* Grimmett Decl., Exs. D-G.[6] These CBAs provide that an employee will **not** be entitled to overtime when Network elects to vary the commencement of a shift. *See id.* Accordingly, Plaintiffs claims are preempted because the Court must interpret these provisions to determine whether the alleged pre-shift work was the result of a varied shift.

Moreover, Plaintiffs do not fully analyze CBA provisions that are relevant to overtime and/or compensable work. While Plaintiffs contend that only the Local 1298 and Local 1010 CBAs include provisions related to travel time, they completely neglect Article IV, Paragraph 1 of the Local 60 CBA.[7] *See* Grimmett Decl., Ex. D. This provision memorializes the longstanding practice that arriving at Network's Yards to secure free transportation does not constitute compensable work. As the evidence establishes, this is a free benefit offered to Plaintiffs.

Plaintiffs also fail to consider the overtime exception set forth in the Local 731 CBA. Namely, Article VII, Section 1 of the Local 731 CBA states that an employee will be entitled to overtime for pre-shift work when they are "preparing for hazardous materials work prior to the start of their shift." The Local 731 Plaintiffs merely argue that they are not seeking overtime premiums for "preparing hazardous materials," which does not bear any relevance to the preemption inquiry. This provision sets forth the limited circumstances when pre-shift work will be subject to overtime. Given this express carveout, the alleged pre-shift tasks alleged in the Complaint are **not** subject to overtime under the Local 731 CBA, **unless** the Local 731 Plaintiffs

---

[6] The specific provisions governing varying shifts are: (a) Article VII, Section 2(e) of the Local 731 CBA (Grimmett Decl., Ex. D); (b) Article VIII, Section 7(b) of the Local 137 CBA (Grimmett Decl., Ex. E); (c) Article IX, Section 8 of the Local 15 CBA (Grimmett Decl., Ex. G); and (d) Article VII, Section E of the Local 60 CBA (Grimmett Decl., Ex. F).

[7] This provision states "[w]here transmission, pipeline or cable jobs are more than one half (1/2) mile from the nearest railway or conveyance, it is agreed that the Employer shall arrange to convey Employees to and from the job in the form of a suitable protected enclosed vehicle."

were performing tasks to "prepare for hazardous material work." The Court is undoubtedly required to interpret the above-mentioned provisions to assess whether Plaintiffs were entitled to compensation for travel time and/or pre/post shift work.

D.  **The Court Must Also Consider the CBAs' Implied Terms**

Plaintiffs improperly take the position that Courts are flat-out prohibited from considering the CBAs' implied terms.  The two cases Plaintiffs cite are clearly distinguishable from the instant matter.  These cases declined to evaluate potentially implied CBA terms because the record was devoid of testimony and evidence. *See Diaz*, 2025 WL 1220924, at *2 ("[R]esolving whether there was a past practice or custom will require testimony and evidence upon which Plaintiffs – and Defendants – will rely."); *see also Cruz v. C.A.C. Industries, Inc.*, Index No. 805294/2024E, NYSCEF Doc. No. 38, at *14 (Sup. Ct. Bx. Cty. 2025) ("To the extent that defendant contends that the CBA includes implied terms established through long-standing past practices and by virtue of the uniform practices of work in the construction industry in New York, resolving the issue of whether plaintiff was required to perform pre-shift and post-shift work will require testimony and evidence entirely outside the CBA.").[8]

Here, the parties have completed discovery.  As such, the Court can consider deposition testimony and affidavits that speak to whether there are any implied terms that would require interpretation.  *See Morrell*, 2021 WL 3185608, at *2 (S.D.N.Y. 2021) ("[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.").  As further explained in the Motion, the evidence demonstrates that the parties have

---

[8]    Defendants acknowledge that it initially relied on *Cruz* in its pre-motion letter. *See* ECF Docket No. 50. However, in response to a motion to reargue, the Court in *Cruz* reversed its decision.  This reversal occurred *after* Defendants filed their pre-motion letter.

established through long-standing practices, industry standards, and bargaining history that certain Plaintiffs are **not** entitled to compensation for travel time and/or the pre/post shift tasks that are allegedly incidental thereto. *See* Grimmett Decl., Exs. D, K, L, and M.

### E. **The Cases Relied Upon By Plaintiffs Are Distinguishable**

Throughout the Opposition, Plaintiffs cherry-pick quotes from various decisions. While Plaintiffs would like the Court to believe that these quotes support their position, it is telling that Plaintiffs do not provide detailed case summations or offer a substantive analysis of the cases. The reason being is that Plaintiffs are not able to rely on an analogous case.

First, the Court must overlook Plaintiffs' inaccurate interpretation of *Chu v. Chinese-American Planning Council Home Attendant Program, Inc.*, 194 F.Supp.2d 221, 228-29 (S.D.N.Y. 2016). Specifically, Plaintiffs intentionally omit a portion of a quote from *Chu*. Though Plaintiffs claim that *Chu* stands for the broad proposition that every unpaid wage claim under the NYLL is legally independent of CBA provisions, the Court's observations were related to the specific claims at issue.[9]  Plaintiffs also selectively quote to *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp.2d 412, 422 (S.D.N.Y. 2013) and *Domnister v. Exclusive Ambulette Inc.*, 607 F.3d 84, 90 (2d Cir. 2010).[10]

In fact, *Chu* and *Kaye* recognize that preemption of NYLL claims is warranted under the circumstances present here. Specifically, "Courts in this District have observed that cases in which

---

[9]     The quote that Plaintiffs include in the Opposition is "[c]ourts have routinely held that the sort of unpaid wage claims under the NYLL . . . are 'legally independent' of wage-related provisions in a CBA and are therefore not preempted by the LMRA." *See* Opposition at pg. 6. The full quote from *Chu* is "[c]ourts have routinely held that the sort of unpaid wage and notice claims under the NYLL **alleged here** are 'legally independent' of wage-related provisions in a CBA and therefore not preempted by the LMRA." *Id.* (emphasis added).

[10]     The *Kaye* quote that Plaintiffs include in the Opposition is "It is "well settled that claims pursuant to N.Y. Labor Law are truly independent of rights under the CBA." *See* Opposition at pg. 7. The full sentence and the actual quote from *Kaye* is "***[w]ith respect to the balance of [p]laintiff's claims, it appears to be*** well settled that claims pursuant to N.Y. Labor Law are 'truly independent of rights under the [CBA].'" *Id.* (emphasis added).  Plaintiffs also lump in *Domnister* into their proffered analysis of whether they are seeking independent rights under the NYLL and FLSA. The Court should overlook Plaintiffs' misguided reliance on *Domnister*, as it involved claims of discrimination and retaliation. *Id.* at 86.

LMRA preemption applies typically fall into three categories: (1) 'cases in which a plaintiff alleges that defendant violated the CBA itself,' (2) 'cases in which a plaintiff claims that a provision of the CBA itself violates state law,' and (3) '***cases in which a CBA provision relevant to the plaintiff's claim is ambiguous***.'" *Chu*, 194 F.Supp.2d at 227 (quoting *Kaye*, 975 F.Supp.2d at 423) (emphasis added).  Plaintiffs' claims fall within this third category, as the provisions summarized herein could be subject to various interpretations.

Plaintiffs inaccurately portray the State Court's decision in *Tamburino v. Madison Sq. Garden, LP*, 115 A.D.3d 217 (1st Dep't 2014) as "instructive."  However, Plaintiffs conveniently neglect the fact that the parties were authorized to contract away the employees' entitlement to gratuities under NYLL § 196-b. *Id.* at 220.  Given that the parties did not waive NYLL § 196-b in the manner required by law, the Court recognized that plaintiffs had independent rights under the NYLL. Here, Plaintiffs do not have an independent right for compensation under the NYLL or FLSA for merely arriving at the Yards to secure free transportation.

Contrary to Plaintiffs' contentions, this is not a case that involves "parallelism."  Under this theory, a claim will not be preempted when an employee's rights under a CBA are "identical to those in the NYLL." *See Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp.2s 129 (E.D.N.Y. 2011)[11]; *see also McLean v. Garage Mgmt. Corp.*, 2011 WL 1143003 (S.D.N.Y. 2011). Here, the CBA provisions at issue are at odds with Plaintiffs' claims under the NYLL and FLSA.

---

[11]    Plaintiffs' claims are more akin to those raised in *Johnson v. D.M. Rothman Co.*, 861 F. Supp.2d 326, 333 (S.D.N.Y. 2012), which drew a distinction from *Polanco*. In *Johnson*, the Court recognized that preemption is warranted when the Court is required to interpret whether specific tasks were subject to additional payments under the CBA. *Id.* at 333 ("[t]o determine whether the [p]laintiffs were entitled to grandfather and hi-lo pay, the Court would have to evaluate Plaintiffs' work histories in light of the intended meaning and purpose of the CBA's terms."). Here, the Court must similarly analyze, among other things, whether (a) Plaintiffs were subject to a varying shift; (b) the Local 60, Local 1298, and Local 1010 CBAs expressly prohibit compensation for travel time; and (c) the Local 731 Plaintiffs' alleged pre-shift work constituted "prepar[ing] for hazardous material work."

Accordingly, the Court's interpretation of the CBAs is necessary to determine whether the alleged tasks performed by Plaintiffs were compensable.

This is also not a case where Plaintiffs are challenging their rate of pay. *See McLean*, 2011 WL 1143003, at * 3 (recognizing that "'mere referral to the CBA for information such as rate of pay' is insufficient to find that a state law claim is preempted."); *see also Isaacs v. Cent. Parking Sys. of New York, Inc.*, 2012 WL 957494, at *4 (E.D.N.Y. 2012) ("[Plaintiff] alleges that [defendant] excluded certain payments such as shift differentials and longevity pay from his overtime rate calculation.")[12]; *see also Ramirez v. RiverBay Corp.*, 35 F. Supp.3d 513, 521 (S.D.N.Y. 2014) ("The Complaint alleges that the defendants improperly calculated the plaintiffs' base rate of pay for determining their overtime compensation by failing to include the nighttime differential that the plaintiffs earned. . . ."); *see also Berger v. New York Univ.*, 2019 WL 3526533, at *5 (S.D.N.Y. 2019) (recognizing that "preemption is not triggered by the mere fact that a court will need to consult the CBA to determine the appropriate rate of pay for any periods as to which liability is found.").[13] Given that Plaintiffs' rate of pay is not in dispute, Plaintiffs' reliance on these cases is inapposite.

---

[12]     The plaintiff in *Isaacs* also claimed that he worked twenty minutes after his shift. *Id.* at *4.  For obvious reasons, the Court recognized that CBA provisions related to "shift differential, longevity pay, and vacation pay" were not relevant to these claims.  Similarly, Plaintiffs rely on *Mazur* where the CBA provisions identified by defendant were clearly irrelevant to the specific claims at issue. *See Mazur v. UGS Herman, LLC*, 2024 WL 3952600, at *2 (S.D.N.Y. 2024) ("[A]lthough referring to pay or payroll generally, do not need to be interpreted to resolve [p]laintiffs' NYLL claim, which turns on the frequency of [p]laintiffs' *wage payments*, not their deductions or contributions.").  These cases are distinguishable from the claims here because the CBA provisions are directly relevant to whether the alleged tasks performed by Plaintiffs were compensable.

[13]     *Berger* is also distinguishable because the plaintiff acknowledged certain tasks were not compensable under the CBA (an issue that is in dispute here).  Specifically, "[defendant] points out that guards are not required to perform any job functions during the fifteen-minute post-shift period for which the CBA guarantees payment and that state law provides no independent right to be paid for time that is not spent on actual work tasks. . . . [Plaintiff], though, does not appear to seek compensation for any such periods." *Id.* at *4.

In a further attempt obscure the issue, Plaintiffs rely on several cases where the litigant waived specific rights that were available to them under the CBA, and instead, sought independent rights for overtime under the FLSA and NYLL. *See Arroyo v. NYU Langone Hosp.*, 2019 WL 5682628, at *5, n.4 (S.D.N.Y. 2019) ("Plaintiff's claim is for weekly overtime pay and does not require analysis of potential daily overtime pay); *see also Gyecsek v. J.P. Hogan Coring & Sawing Corp.*, 2019 WL 1059998, at *4 (S.D.N.Y. 2019). These cases do **not** come anywhere close to addressing the dispute here – whether Plaintiffs' alleged travel time and pre/post shift work constituted compensable work under the CBAs.

In sum, this Court's decision in *Diaz*, 2025 WL 1220924, is controlling. Plaintiffs, who received the free benefit of transportation to/from the jobsites, do not have an independent claim for compensation under the NYLL or FLSA. Instead, the Court is required to interpret the CBAs and their implied terms to determine whether Plaintiffs' unpaid wage claims have merit.

## POINT II

**PLAINTIFFS CLAIMS ARE PREEMPTED BY THE *GARMON* DOCTRINE**

Plaintiffs improperly attempt to unilaterally change terms and conditions of their respective CBAs and the longstanding practices emanating therefrom. The *Garmon* doctrine is intended to prevent a litigant from altering employment conditions without bargaining in good faith pursuant to the NLRA. As discussed herein, the CBAs provide that Plaintiffs are **not** entitled to compensation for arriving at the Yards and traveling to and from the worksite. Given that Section 8(a)(5) of the NLRA imposes a duty to bargain before instituting changes to a union member's terms and conditions of employment, any unilateral changes to the wage and hour provisions of these CBAs would run afoul of the NLRA. *See San Diego Building Trades Council v. Garmon*, 339 U.S. 236 (1959) (holding the NLRA preempts state regulations on any activity "arguably protected or prohibited" by the NLRA).

10

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court issue an Order, pursuant to Fed. R. Civ. P. Rule 12(b)(1) dismissing Plaintiffs' Complaint with prejudice and granting Defendants such other further relief as the Court deems just and proper.

Dated: Woodbury, New York
       March 11, 2025

KAUFMAN DOLOWICH LLP
*Attorneys for Defendants*

By: _____
Andrew Richards, Esq.
Edward H. Grimmett, Esq.
135 Crossway Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100
arichards@kaufmandolowich.com
egrimmett@kaufmandolowich.com

11